**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Julia A. Luster (State Bar No. 295031)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
            jluster@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO SANTIAGO, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>NVIDIA CORPORATION, ASUS COMPUTER INTERNATIONAL, and TIGERDIRECT, INC.,<br><br>                              Defendant. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

CLASS ACTION COMPLAINT

Plaintiff Pedro Santiago ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant NVIDIA Corporation ("NVIDIA"), ASUS Computer International ("ASUS"), and TigerDirect, Inc. ("TigerDirect").  Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF ACTION

1.      This is a class action lawsuit on behalf of purchasers of the NVIDIA GeForce GTX 970 graphics card (hereafter, the "GTX 970"), also known as a graphics accelerator, video card, display card, display adapter, or more informally as a graphics processing unit ("GPU").[1]  The gravamen of this action is that Defendants marketed and sold the GTX 970 with false and misleading representations concerning the card's technical specifications and performance, which were substantially lower than represented on the packaging and in advertising materials.  Thus, Plaintiff and class members have been hit with a costly double-whammy:  a premium purchase price (the MSRP is $329) for a product that does not perform as advertised.

2.      As will be explained below, a graphics card is a specialized piece of computer hardware designed to rapidly manipulate and alter memory to accelerate the creation of images in a frame buffer intended for output to a display.  Stated otherwise, graphics cards are designed to interface with a computer's other components to process (*i.e.*, render) graphics, which are then typically displayed on a monitor or other display device.  Because stand-alone graphics cards (hereafter, "discrete graphics cards") like the GTX 970 are specifically engineered to process graphics, they can render graphical output substantially faster than a computer's general-purpose central processing unit ("CPU") and random access memory ("RAM").  Thus, users can substantially increase system performance by offloading these tasks to a discrete graphics card, rather than processing graphics directly from their CPU and RAM.  Additionally, modern graphics

---

[1] Technically, a GPU is only a piece of a stand-alone graphics card like the GTX 970, which also includes casing, memory, and power regulators, among other components.  Nonetheless, users will sometimes use the term "GPU" to generically refer to the entire graphics card, similar to the way in which entire computers were sometimes called "CPUs" in the 1990's.

cards like the GTX 970 support a host of advanced graphical features for 3D applications that would not otherwise be feasible at acceptable frame rates using the CPU and RAM alone.

3.      Over the years, discrete graphics cards like the GTX 970 have evolved into miniature computers unto themselves.  That is, the GTX 970 has its own casing, its own RAM, its own cooling system, its own processor, and its own dedicated power regulators:



4.      Defendants falsely and misleadingly represented the technical specifications and performance of the GTX 970 in its advertising and marketing materials.  Specifically, Defendants represented that the GTX 970 had **2 MB** (megabytes) of L2 cache, **64** parallel processing cores called render output units ("ROPs"), and **4 GB** (gigabytes) of video RAM ("VRAM") (collectively, the "Misrepresentations").

5.      However, these specifications are false.  In fact, the GTX 970 has only **1.75 MB** of L2 cache, and **56** ROPs.  Additionally, the purported "4 GB" of VRAM is actually divided into two pools:  a main pool of **3.5 GB**, and a smaller pool of 0.5 GB that runs at approximately *one-seventh* the speed of the 3.5 GB pool (192 GB per second, versus 28 GB per second), which causes a bottleneck that reduces the GTX 970's performance.

6.      Together, these false and misleading representations establish that the GTX 970 cannot perform as advertised, and is not sold as advertised.  By selling the GTX 970 with false and misleading technical specifications, Defendants dupe consumers into purchasing a graphics card that is worth substantially less than represented.  Simply put, Plaintiff and class members did not receive the graphics card they were promised and expected.

7.      Plaintiff Santiago asserts claims on behalf of himself and a nationwide class of purchasers of the GTX 970 for violation of the Magnuson-Moss Warranty Act, breach of express warranty, breach of the implied warranty of merchantability, unjust enrichment, violation of the California Unfair Competition Law ("UCL"), negligent misrepresentation, and fraud.

## PARTIES

8.      Plaintiff Pedro Santiago is a citizen of Puerto Rico who resides in Ponce, Puerto Rico.  On December 14, 2014, Plaintiff Santiago purchased an ASUS-made GTX 970 for $349.99 from a TigerDirect retail location in Ponce, Puerto Rico.  Prior to his purchase of the GTX 970, Mr. Santiago was familiar with the card's purported technical specifications and performance characteristics, which represented that the card had 2 MB of L2 cache and 64 ROPs.  Additionally, Mr. Santiago reviewed the product's labeling and packaging prior to purchase, which represented that the card had 4 GB of VRAM.  Plaintiff Santiago saw these representations prior to and at the time of purchase, and understood them as representations and warranties that the GTX 970 did, in fact, meet these specifications.  Accordingly, these representations and warranties were part of the basis of the bargain, in that he attributed value to these specifications and would not have purchased the GTX 970 had he known that these specifications were false.  However, the GTX 970 did not perform as represented.  In reliance on these representations and warranties, Plaintiff Santiago paid a tangible increased cost for the GTX 970, which was worth less than represented. Plaintiff Santiago also understood that in making the sale, his retailer was acting with the knowledge and approval of Defendants NVIDIA and ASUS and/or as the agent of Defendants NVIDIA and ASUS.  Plaintiff Santiago further understood that the purchase involved a direct transaction between himself and Defendants NVIDIA and ASUS, because his purchase came with NVIDIA and ASUS's representations and warranties that the GTX 970 does, in fact, have 2 MB of L2 cache, 64 ROPs, and 4 GB of VRAM.

9.      Defendant NVIDIA Corporation is a Delaware corporation with its principal place of business in Santa Clara, California.  Defendant NVIDIA researched, designed, and marketed the GTX 970.  NVIDIA is a publically-traded company with a market capitalization of $12.13 billion, annual revenue of $4.13 billion, and an annual EBITDA of $735 million.  Moreover, the market for

discrete graphics cards is a duopoly, which NVIDIA dominates.  As of Q3 2013, NVIDIA captured 64.5% of the market, while its competitor Advanced Micro Devices, Inc. ("AMD") captured only 35.5%.

10.     Defendant ASUS Computer International is a California corporation with its principal place of business in Fremont, California.  Defendant ASUS is the American subsidiary of ASUSTeK Computer Inc., a leading manufacturer of computer hardware and electronics headquartered in Taipei, Taiwan, with a market capitalization of $245.87 billion.  Relevant to this action, Defendant ASUS manufactured the particular GTX 970 purchased by Plaintiff Santiago. Within the industry, it is customary for designers like NVIDIA and AMD to license their designs to major electronics manufacturers like ASUS, who in turn press, package, and sell Defendant NVIDIA's graphics cards.  Based on information and belief, the rationale for this arrangement is that it is more cost-effective for Defendant NVIDIA to license its designs to major electronics manufacturers like ASUS, rather than building its own production facilities.  Nonetheless, each graphics card licensed to outside manufacturers must meet NVIDIA's specifications for the GTX 970.  Accordingly, as is customary in the industry, there are ASUS-made GTX 970 cards, EVGA-made GTX 970 cards, MSI-made GTX 970 cards, and PNY-made GTX 970 cards, each with virtually identical specifications and performance.

11.     Defendant TigerDirect, Inc. is a Florida corporation with its principal place of business in Miami, Florida.  Defendant TigerDirect is a major international retailer of computers and consumer electronics.

12.     Whenever reference is made in this Complaint to any representation, act, omission, or transaction of Defendants, that allegation shall mean that Defendants did the act, omission, or transaction through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

13.     Each of the Defendants acted jointly to perpetrate the acts described herein.  At all times relevant to the allegations in this matter, each Defendant acted in concert with, with the knowledge and approval of, and/or as the agent of the other Defendants within the course and scope of the agency, regarding the acts and omissions alleged.

**JURISDICTION AND VENUE**

14.     This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 (federal question).  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

15.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

16.     This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within California, such that Defendants have significant, continuous, and pervasive contacts with the State of California.  Additionally, Defendants NVIDIA and ASUS's principal places of business are in this District.  Furthermore, Defendant ASUS is incorporated in the State of California.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do substantial business in this District, a substantial part of the events giving rise to Plaintiff's claims took place within this District (*e.g.*, the research, development, design, and marketing of the GTX 970), Defendants NVIDIA and ASUS's principal places of business are in this District, and Defendant ASUS is incorporated in the State of California.

**FACTUAL BACKGROUND**

**The Role Of Graphics Cards In Modern Computers**

18.     Preliminarily, modern computers are best understood as a collection of specialized components, each of which has a defined task.  As originally theorized by the mathematician and physicist John von Neumann in 1945, a computer has the following components:  a CPU that processes instructions, memory for storage (*e.g.*, RAM or a hard drive), input from the user (*e.g.*, a mouse or keyboard), output for the user (*e.g.*, a monitor or speakers), and a control unit that coordinates the various components.  Roughly, this basic architecture is still in use today.

19.     Building off this framework, when images are rendered for output on a display device like a computer monitor, they are arranged in a series of tiny dots called pixels.  For

example, the popular resolution 1920x1080 is arranged as a grid of pixels that number 1,920 in width and 1,080 in height, for a total of slightly over 2 million pixels.[2]

20.     Each time the display changes – through moving a mouse, opening a program, watching a movie, playing a computer game, etc. – some or all of the pixels must be updated.  In the case of computer games and animation, the "gold standard" for fluid animation is a refresh rate of at least 60 frames per second.[3]  In the case of 1920x1080 resolution, this means that up to 2 million pixels may need to be updated 60 times per second, for approximately 124 million pixels updated every second.

21.     Rendering graphics is often computationally expensive.  Historically, graphics were rendered with a computer's main CPU and RAM.  Stated otherwise, the CPU and RAM would update each pixel when necessary.  However, the disadvantage to this methodology is that rendering graphics occupies these components, which are simultaneously executing the operating system, kernel, and numerous programs in user space.  Accordingly, commingling these tasks on the computer's main CPU and RAM may reduce the computer's performance system-wide, and the quality of graphics that can be displayed at an acceptable frame rate is fairly limited.

22.     In or about 1995, several companies (including NVIDIA) began marketing discrete graphics cards, which offload graphics rendering to a separate processor that is specifically engineered for this task.  In fact, NVIDIA's "NV1," released in May 1995, was the first commercial graphics card capable of 3D rendering and video acceleration.  Over time, graphics cards have evolved into miniature computers – they have their own processor (a graphics processing unit, or "GPU"), their own RAM, their own cooling system, and sometimes separate power regulators:

---

[2] While 1920x1080 has been a popular resolution for many years, the "Ultra HD" standard has recently gained popularity.  Ultra HD has a resolution of 3840x2160, or about 8.3 million pixels.

[3] Even though 60 frames per second has been a popular target frame rate for many years, monitors and display adapters that support 120 frames per second and higher are now gaining prominence.

1
2
3
4
5
6
7
8
9



10    23.    On modern computers, graphics cards are plugged directly into the motherboard,

11  typically using the PCI Express bus.  Many graphics cards, including the GTX 970, allow users to

12  use multiple cards at once for increased graphical performance with a method called Scan-Line

13  Interleave ("SLI"):

14
15
16



17
18
19
20

21    24.    The advantage of using discrete graphics cards is that the computer's main CPU and

22  RAM are not occupied with rendering graphics, which improves performance system-wide.

23  Additionally, discrete graphics cards like the GTX 970 can render graphical output substantially

24  faster than a computer's main CPU and RAM alone, given that they are specifically engineered for

25  the task.  Furthermore, modern graphics cards like the GTX 970 support a host of advanced

26  graphical features for 3D applications that would not otherwise be feasible at acceptable frame

27  rates using the CPU and RAM alone:  anti-aliasing, anisotropic texture filtering, ambient occlusion,

28

1  motion blur, tessellation, high-dynamic-range, high-resolution textures, detailed shadows, and

2  post-processing, among others.  Simply put, this means that games run at faster frame rates with

3  more features.  Animation and 3D applications will also run faster, and overall system performance

4  is increased.

5         25.     Graphics cards are now a booming industry, which is totally dominated as a duopoly

6  by NVIDIA and its competitor AMD.  These two companies' graphics processors are found in

7  desktop computers, laptop computers, and even in console game systems like the PlayStation 4,

8  Xbox One, and Wii U.  Discrete graphics cards like the GTX 970 have a wide variety of uses,

9  including processing advanced graphics in computer games, assisting with 3D animation and 3D

10  applications, and high-speed parallel processing using the OpenCL and CUDA frameworks.

11  **Defendants Misrepresented The Specifications And Performance Of The GTX 970**

12         26.     During sales and marketing, Defendants misrepresented the technical specifications

13  and performance of the GTX 970.  Specifically, Defendants falsely and misleadingly represented

14  that the GTX 970 has **2 MB** of L2 cache, **64** ROPs, and **4 GB** of RAM.  In actuality, the GTX 970

15  has 1.75 MB of L2 cache, 56 ROPs, and 3.5 GB of RAM, with a separate pool of 0.5 GB RAM

16  that operates at *one-seventh* the speed of the main pool, bottlenecking the card.

17         27.     For background information, L2 cache is a form of extremely high-speed memory,

18  which is typically located on a processor itself (as opposed to a block of RAM).  Since it is much

19  faster than RAM, processors will attempt to pull data from the L2 cache first, and will only access

20  the RAM if the required data is unavailable in the L2 cache (a "cache miss").  Thus, the size of L2

21  cache is directly correlated with performance.  If the L2 cache is larger, a processor can access data

22  much faster on average, because it will need to access the RAM less frequently.

23         28.     Additionally, ROPs are parallel processing cores that assist in rendering pixels.  The

24  "fillrate," or the maximum number of pixels that can be filled per second by the graphics card, is

25  calculated by multiplying the number of ROPs by the clock frequency of the GPU.  Thus, a smaller

26  number of ROPs on a graphics card means that the card can generate fewer pixels per second.

27         29.     Prior to the sale of the GTX 970, Defendants distributed advance copies of the

28  graphics card to reviewers and trade publications, as is customary in the industry.  Accompanying

the sample graphics card was a "GTX 970 Reviewer's Guide," which incorrectly states that the GTX 970 has a 2 MB L2 cache (*i.e.*, 2,048 kilobytes of L2 cache) and 64 ROPs:

**GEFORCE GTX 970 SPECIFICATIONS** *(based on base clock)*

| Graphics Processing Clusters | 4 |
|---|---|
| Streaming Multiprocessors | 13 |
| CUDA Cores | 1664 |
| Texture Units | 104 |
| ROP Units | 64 |
| Base Clock | 1050 MHz |
| Boost Clock | 1178 MHz |
| Memory Clock (Data rate) | 7000 MHz |
| L2 Cache Size | 2048K |
| Total Video Memory | 4096MB GDDR5 |
| Memory Interface | 256-bit |
| Total Memory Bandwidth | 224 GB/s |

In turn, these precise specifications were widely reported in the press.

30.     Furthermore, NVIDIA's website represents that the GTX 970 has "4 GB" of RAM, which has a maximum "Memory Bandwidth" of "224 (GB/sec):"[4]

| GTX 970 Memory Specs: | |
|---|---|
| Memory Clock | 7.0 Gbps |
| Standard Memory Config | 4 GB |
| Memory Interface | GDDR5 |
| Memory Interface Width | 256-bit |
| Memory Bandwidth (GB/sec) | 224 |

31.     Similarly, the GTX 970 is prominently advertised on Amazon and Newegg as having 4 GB of RAM.  Specifically, Amazon boasts that the GTX 970 has:  "Gigantic 4GB 7010 MHz GDDR5 memory."[5]  Newegg also lists the GTX 970 as having a "Memory Size" of "4GB."[6] Additionally, Newegg incorporates the purported 4 GB of RAM into the very name of the product:

---

[4] *See* http://www.geforce.com/hardware/desktop-gpus/geforce-gtx-970/specifications.

[5] *See* http://www.amazon.com/ASUS-STRIX-GTX970-DC20C-4GD5-Graphics-Cards/dp/B00NJ9BJ8G.

[6] *See* http://www.newegg.com/Product/Product.aspx?Item=N82E16814121899.

1    "ASUS STRIX-GTX970-DC2OC-4GD5 GeForce GTX 970 **4GB** 256-Bit GDDR5 PCI Express

2    3.0 SLI Support G-SYNC Support Video Card" (emphasis added).

3        32.    The label and packaging of the GTX 970 also prominently states that the product

4    has "4 GB" of memory, in the form of high-speed GDDR5 RAM: [7]



5

6

7

8

9

10

11

12        33.    Each of these representations is false and misleading.  In fact, the GTX 970 has only

13    **1.75 MB** of L2 cache, and **56** ROPs.  Additionally, the purported "4 GB" of VRAM is actually

14    divided into two pools:  a main pool of **3.5 GB**, and a smaller pool of 0.5 GB that runs at

15    approximately *one-seventh* the speed of the 3.5 GB pool, which causes a bottleneck that reduces

16    the GTX 970's performance.

17        34.    These facts came to light around January 24, 2015, when the computing website

18    AnandTech published an article concerning problems with the GTX 970's memory:

19
                [V]arious GTX 970 owners had observed that the GTX 970 was
20              prone to topping out its reported VRAM allocation at 3.5GB rather
                than 4GB, and that meanwhile the [more expensive] GTX 980 was
21              reaching 4GB allocated in similar circumstances.  This unusual
                outcome was at odds with what we know about the cards and the
22              underlying GM204 GPU, as NVIDIA's specifications state that the
                GTX 980 and GTX 970 have identical memory configurations:
23              4GB of 7GHz GDDR5 on a 256-bit bus, split amongst 4
                ROP/memory controller partitions.  In other words, there was no
24              known reason that the GTX 970 and GTX 980 should be behaving
                differently when it comes to memory allocation.
25

26

27    ———————————————
      [7] GDDR5 RAM, or "double data rate type five synchronous graphics random access memory," is a
28    common form of RAM used in graphics cards.

---

CLASS ACTION COMPLAINT                                                                    10

> Since then there has been some further investigation into the matter using various tools written in CUDA in order to try to systematically confirm this phenomena and to pinpoint what is going on.  Those tests seemingly confirm the issue – the GTX 970 has something unusual going on after 3.5GB VRAM allocation….

> Despite the outward appearance of identical memory subsystems, there is an important difference here that makes a 512MB partition of VRAM less performant or otherwise decoupled from the other 3.5GB.

*See* http://www.anandtech.com/show/8931/nvidia-publishes-statement-on-geforce-gtx-970-memory-allocation.

35.    Side-by-side benchmarks confirm that the 3.5 GB pool of RAM operates at <u>192 GB per second</u>, while the 0.5 GB pool only operates at <u>28 GB per second</u>.  Stated otherwise, the 0.5 GB pool is *6.86 times slower* than the 3.5 GB pool.

36.    Later stories also found that NVIDIA's specifications concerning the size of the L2 cache and the number of ROPs on the GTX 970 were similarly incorrect.  For example, the website Gamespot reported on January 27, 2015:

> [T]he company has revealed that the published specifications for the GTX 970 were partially incorrect, with the GPU actually sporting fewer ROPs and L2 cache than consumers and reviewers were initially led to believe.

> Nvidia's Senior VP of GPU Engineering Jonah Alben spoke to PC Perspective about the issue, with the publication noting that "despite initial reviews and information from NVIDIA, the GTX 970 actually has fewer ROPs and less L2 cache than the GTX 980.  NVIDIA says this was an error in the reviewer's guide and a misunderstanding between the engineering team and the technical PR team on how the architecture itself functioned.  That means the GTX 970 has 56 ROPs and 1792 KB of L2 cache compared to 64 ROPs and 2048 KB of L2 cache for the GTX 980."

*See* http://www.gamespot.com/articles/nvidia-admits-to-error-in-gtx-970-specs-and-memory/1100-6424915/.

37.    Nowhere in these sales and marketing materials (or on the product's packaging) do Defendants disclose that the GTX 970 actually has a separate pool of RAM that runs at one-seventh the speed of the main pool.  Instead, consumers are led to believe that the product has

a <u>single</u> pool of 4 GB RAM with a maximum memory bandwidth of 224 GB / sec – which is only possible to achieve when the <u>slower</u> pool of 0.5 GB is in use, thereby bottlenecking the rest of the card.  Consumers are also led to incorrectly believe that the GTX 970 has 2 MB of L2 cache and 64 ROPs.

38.   Defendants' mislabeling is intentional.  As the designers and manufacturers of the GTX 970, Defendants are in a unique position to know the exact specifications of their own product.  Industry-leading designers and manufacturers of graphics cards, like Defendants, do not unwittingly mislabel the specifications of their own products.

39.   For the purposes of calculating damages, the GTX 970 ($329) as advertised is comparable to the GTX 980 ($549), which does have 4 GB of RAM in one pool, a 2 MB L2 cache, and 64 ROPs.  Consumers therefore paid a price premium of approximately $220 per card.

**CLASS REPRESENTATION ALLEGATIONS**

40.   Plaintiff seeks to represent a class defined as all persons in the United States who purchased a GTX 970 (the "Class").  Excluded from the Class are persons who made such purchase for purpose of resale.

41.   Plaintiff also seeks to represent a subclass of all Class members who purchased a GTX 970 in Puerto Rico (the "Puerto Rico Subclass").

42.   Members of the Class and Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and Subclass number in the tens of thousands.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third party retailers and vendors.

43.   Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:  whether Defendants warranted that the GTX 970 has 2 MB of L2 cache; whether Defendants warranted that the GTX 970 has 64 ROPs; whether Defendants

warranted that the GTX 970 has 4 GB of VRAM; whether Defendants breached these warranties; and whether Defendants committed statutory and common law fraud by doing so.

44.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff purchased a GTX 970 in reliance on the representations and warranties described above, and suffered a loss as a result of that purchase.

45.     Plaintiff is an adequate representative of the Class and Subclass because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

46.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and Subclass members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### Violation Of The Magnuson-Moss Warranty Act,

### 15 U.S.C. §§ 2301, *et seq.*

47.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

48.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against all Defendants.

49.     The GTX 970 is a consumer product as defined in 15 U.S.C. § 2301(1).

50.     Plaintiff and the Class and Subclass members are consumers as defined in 15 U.S.C. § 2301(3).

51.     Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

52.     In connection with the sale of the GTX 970, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), by making express warranties that the GTX 970 had (i) 2 MB of L2 cache, (ii) 64 ROPs, and (iii) 4 GB of VRAM.

53.     The GTX 970 does not conform to the express warranties because each of the express warranties is false and misleading.  In fact, the GTX 970 has only 1.75 MB of L2 cache, and 56 ROPs.  Additionally, the purported "4 GB" of VRAM is actually divided into two pools:  a main pool of 3.5 GB, and a smaller pool of 0.5 GB that runs at approximately one-seventh the speed of the 3.5 GB pool (192 GB per second, versus 28 GB per second), which causes a bottleneck that reduces the GTX 970's performance.

54.     By reason of Defendants' breach of warranties, Defendants violated the statutory rights due Plaintiff and the Class and Subclass members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiff and the Class and Subclass members.

55.     Plaintiff and the Class and Subclass members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the GTX 970 if they knew the truth about the product, and the graphics card they received was worth substantially less than the card they were promised and expected.

## COUNT II

### Breach Of Express Warranty

56.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

57.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against all Defendants.

58.     Defendants, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the GTX 970 had (i) 2 MB of L2 cache, (ii) 64 ROPs, and (iii) 4 GB of VRAM.

59.     In fact, the GTX 970 has only 1.75 MB of L2 cache, and 56 ROPs.  Additionally, the purported "4 GB" of VRAM is actually divided into two pools:  a main pool of 3.5 GB, and a smaller pool of 0.5 GB that runs at approximately one-seventh the speed of the 3.5 GB pool (192 GB per second, versus 28 GB per second), which causes a bottleneck that reduces the GTX 970's performance.

60.     As a direct and proximate cause of Defendants' breach of express warranty, Plaintiff and Class members have been injured and harmed because they would not have purchased the GTX 970 if they knew the truth about the product, and the graphics card they received was worth substantially less than the card they were promised and expected.

## COUNT III

### Breach Of Implied Warranty Of Merchantability

61.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

62.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against all Defendants.

63.     Defendants, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the GTX 970 had (i) 2 MB of L2 cache, (ii) 64 ROPs, and (iii) 4 GB of VRAM.  In fact, the GTX 970 has only 1.75 MB of L2 cache, and 56 ROPs.  Additionally, the purported "4 GB" of VRAM is actually divided into two pools:  a main pool of 3.5 GB, and a smaller pool of 0.5 GB that runs at approximately one-seventh the speed of the 3.5 GB pool (192 GB per second, versus 28 GB per second), which causes a bottleneck that reduces the GTX 970's performance.

64.     Defendants breached the warranty implied in the contract for the sale of the GTX 970 because it could not "pass without objection in the trade under the contract description," the goods were not "of fair average quality within the description," the goods were not "adequately

contained, packaged, and labeled as the agreement may require," and the goods did not "conform to the promise or affirmations of fact made on the container or label." *See* U.C.C. § 2-314(2) (listing requirements for merchantability). As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by Defendants to be merchantable.

65. Plaintiff and Class members purchased the GTX 970 in reliance upon Defendants' skill and judgment in properly packaging and labeling the GTX 970.

66. The GTX 970 was not altered by Plaintiff or Class members.

67. The GTX 970 was defective when it left the exclusive control of Defendants.

68. Defendants knew that the GTX 970 would be purchased and used without additional testing by Plaintiff and Class members.

69. The GTX 970 was defectively designed and unfit for its intended purpose, and Plaintiff and Class members did not receive the goods as warranted.

70. As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and Class members have been injured and harmed because they would not have purchased the GTX 970 if they knew the truth about the product, and the graphics card they received was worth substantially less than the card they were promised and expected.

## COUNT IV

### Unjust Enrichment

71. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

72. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against all Defendants.

73. Plaintiff and Class members conferred benefits on Defendants by purchasing the GTX 970.

74. Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of the GTX 970. Retention of those moneys under these circumstances is unjust and inequitable because Defendants misrepresented that the GTX 970 had (i) 2 MB of L2 cache, (ii) 64 ROPs, and (iii) 4 GB of VRAM. In fact, the GTX 970 has only 1.75

MB of L2 cache, and 56 ROPs.  Additionally, the purported "4 GB" of VRAM is actually divided into two pools:  a main pool of 3.5 GB, and a smaller pool of 0.5 GB that runs at approximately one-seventh the speed of the 3.5 GB pool (192 GB per second, versus 28 GB per second), which causes a bottleneck that reduces the GTX 970's performance.  These misrepresentations caused injuries to Plaintiff and Class members because they would not have purchased the GTX 970 if the true facts were known.

75.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and Class members for its unjust enrichment, as ordered by the Court.

<u>COUNT V</u>

**Violation Of California's Unfair Competition Law,**

**California Business & Professions Code §§ 17200,** *et seq.*

76.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

77.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against all Defendants.

78.     Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

79.     Defendants' misrepresentations and other conduct, described herein, violated the "unlawful" prong of the UCL by violating the Magnuson-Moss Warranty Act, as described herein.

80.     Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

81.     Defendants violated the "fraudulent" prong of the UCL by making misrepresentations about the GTX 970, as described herein.

82.     Plaintiff and the California Subclass lost money or property as a result of Defendants' UCL violations because they would not have purchased the GTX 970 if they knew the truth about the product, and the graphics card they received was worth substantially less than the card they were promised and expected.

## COUNT VI

### Negligent Misrepresentation

83.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

84.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against all Defendants.

85.     As discussed above, Defendants misrepresented that the GTX 970 had (i) 2 MB of L2 cache, (ii) 64 ROPs, and (iii) 4 GB of VRAM.  In fact, the GTX 970 has only 1.75 MB of L2 cache, and 56 ROPs.  Additionally, the purported "4 GB" of VRAM is actually divided into two pools:  a main pool of 3.5 GB, and a smaller pool of 0.5 GB that runs at approximately one-seventh the speed of the 3.5 GB pool (192 GB per second, versus 28 GB per second), which causes a bottleneck that reduces the GTX 970's performance.

86.     At the time Defendants made these representations, Defendants knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

87.     At an absolute minimum, Defendants negligently misrepresented and/or negligently omitted material facts about the GTX 970.

88.     The negligent misrepresentations and omissions made by Defendants, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the GTX 970.

89.     Plaintiff and Class members would not have purchased the GTX 970 if the true facts had been known.

90.     The negligent actions of Defendants caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

**COUNT VII**

**Fraud**

91.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

92.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against all Defendants.

93.     As discussed above, Defendants provided Plaintiff and Class members with false or misleading material information and failed to disclose material facts about the GTX 970, including but not limited to the fact that it has only 1.75 MB of L2 cache, and 56 ROPs.  Additionally, the purported "4 GB" of VRAM is actually divided into two pools:  a main pool of 3.5 GB, and a smaller pool of 0.5 GB that runs at approximately one-seventh the speed of the 3.5 GB pool (192 GB per second, versus 28 GB per second), which causes a bottleneck that reduces the GTX 970's performance.

94.     The misrepresentations and omissions made by Defendants, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the GTX 970.

95.     The fraudulent actions of Defendants caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a.     For an order certifying the nationwide Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

b.     For an order declaring the Defendants' conduct violates the statutes referenced herein;

1       c.      For an order finding in favor of Plaintiff, the nationwide Class, and the Subclass on

2           all counts asserted herein;

3       d.      For compensatory and punitive damages in amounts to be determined by the Court

4           and/or jury;

5       e.      For prejudgment interest on all amounts awarded;

6       f.      For an order of restitution and all other forms of equitable monetary relief;

7       g.      For injunctive relief as pleaded or as the Court may deem proper; and

8       h.      For an order awarding Plaintiff and the Class and Subclass his reasonable attorneys'

9           fees and expenses and costs of suit.

10   <strong><u>DEMAND FOR TRIAL BY JURY</u></strong>

11   Plaintiff demands a trial by jury of all issues so triable.

12

13   Dated: February 20, 2015        Respectfully submitted,

14           **BURSOR & FISHER, P.A.**

15

16           By:   */s/ L. Timothy Fisher*

                L. Timothy Fisher

17

18           L. Timothy Fisher (State Bar No. 191626)
        Julia A. Luster (State Bar No. 295031)
        1990 North California Boulevard, Suite 940

19           Walnut Creek, CA 94596
        Telephone:  (925) 300-4455

20           Facsimile:  (925) 407-2700
        E-Mail: ltfisher@bursor.com

21                  jluster@bursor.com

22           **BURSOR & FISHER, P.A.**
        Scott A. Bursor (State Bar No. 276006)

23           888 Seventh Avenue
        New York, NY  10019

24           Telephone: (212) 989-9113
        Facsimile:  (212) 989-9163

25           E-Mail: scott@bursor.com

26           *Attorneys for Plaintiff*

27

28